IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY<br>  600 Fifth Street, N.W.<br>  Washington, DC 20001<br><br>      Plaintiff<br><br>v.<br><br><br>LOCAL 689, AMALGAMATED TRANSIT UNION<br>  2701 Whitney Place<br>  Forestville, MD 20747<br><br>  c/o Jackie L. Jeter<br>  President and Business Agent<br>  2701 Whitney Place<br>  Forestville, MD 20747<br><br>      Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:15-cv-536<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT TO ENJOIN ARBITRATIONS,
FOR DECLARATORY RELIEF, AND FOR OTHER RELIEF**

Washington Metropolitan Area Transit Authority ('WMATA"), by and through

undersigned counsel, as and for its Complaint, states as follows:

**Introduction**

1.       This case is related to *Little v. Washington Metropolitan Area Transit Authority*,

Case No. 1:14-cv-1289 (RMC) (D.D.C.) ("*Little v. WMATA*").

2.       In this case, WMATA seeks to enjoin two grievance arbitrations initiated by Local

689 of the Amalgamated Transit Union in which Local 689 seeks to arbitrate grievances over

WMATA's criminal background screening policies and practices.  The arbitrations may not proceed,

and must be enjoined, because (a) the subject matters of the underlying grievances are not arbitrable,

may not be considered or decided in arbitrations, and must be adjudicated, if at all, in a court action and (b) the subject matters of the underlying grievances and the arbitrations are the subject matter of *Little v. WMATA*, in which Plaintiffs sue individually and as purported representatives of and on behalf of classes of persons that include persons apparently in the "groups" that Local 689 claims are eligible for relief in the arbitrations.

## Parties

3.      WMATA is an interstate-compact agency and instrumentality of the District of Columbia, the State of Maryland, and the Commonwealth of Virginia.  WMATA was created by interstate Compact approved by Congress and codified at D.C. Code § 9-1107.01; Md. Code, Transportation, § 10-204; and Va. Code §§ 56-529 to 56-530.  WMATA operates the public transportation system in District of Columbia and surrounding Maryland and Virginia.

4.      Local 689 largely represents operators, mechanics, maintenance personnel, and clerical personnel that WMATA employs, for purposes of collective bargaining.

5.      WMATA and Local 689 are parties to the Collective Bargaining Agreement between WMATA and Local Union 689 of the Amalgamated Transit Union effective from July 1, 2012 through June 30, 2016 (the "CBA").  The CBA provides in part:

**Sec. 102 - Recognition of Union**

(a) The Authority recognizes the Union as the exclusive bargaining representative for Operators, Construction and Maintenance Employees of the Authority, all work associated with the administrative and clerical classifications set forth elsewhere in this agreement, all employees employed in any and all of the classifications of Depot Clerks, Stock Clerks, Garage Clerks, and Revenue Equipment Servicemen, including all other employees whose wage rates are set forth in other sections of this Agreement, and all operating and maintenance employees of the Authority in the subway system, but excluding Confidential Secretaries, Claims Adjusters, Accountants, Casual Employees, Human Resource's Employees, Supervisors, Street Supervisors, Dispatchers, Supervisor of Fare Box Maintenance, Professional Employees, and Guards as defined in the Labor Management Relations Act of 1947, as amended.

(b) The legal rights, obligations and responsibilities of the Authority and the Union with regard to collective bargaining and resort to binding interest arbitration are specified in the WMATA Compact. Within that framework, the Authority recognizes Local 689 as the exclusive bargaining representative of the employees covered by this agreement, and, except as expressly waived by other specific provisions of this agreement, the Union reserves the right to bargain and where necessary to seek interest arbitration concerning all issues relating to wages, hours and working conditions.

The Union acknowledges that all matters pertaining to the management of operations, including the type, kind and extent of service to be rendered to the public, the equipment used, the maintenance of reasonable efficiency standards, the hiring and establishment of standards for selection and qualification of employees, standards for the promotion of employees and their discipline and discharge for proper cause, and the development and enforcement of reasonable rules and regulations regarding employment are the prerogatives of the Authority and are reserved by the Authority unless expressly waived by specific provisions of this agreement, or by the past practices of the parties.

## Jurisdiction and Venue

6.      The court has subject matter jurisdiction pursuant to Section 81 of the Compact.

7.      Venue is proper in this court pursuant to Section 81 of the Compact and 28 U.S.C. § 1391(b)(1) and (2).   According to the grievances that are the subject of this action, the purported grievant resides in the District of Columbia, and a substantial part of the events giving rise to this Complaint occurred in the District of Columbia.

## Facts Giving Rise to the Claim for Relief

8.      On or about May 30, 2014, on behalf of Local 689, Local 689 Second Vice President Gerry Garnett initiated against WMATA a "group grievance ... on behalf of Bus Operators, maintenance workers, and clerical employees at the Northern Division," Local 689 Grievance No. 9406.  A copy of Grievance No. 9406 is Exhibit 1 to this Complaint and is incorporated into this Complaint by reference.

9.      On or about May 30, 2014, on behalf of Local 689, Local 689 Second Vice President Gerry Garnett initiated against WMATA a "group grievance on behalf of all employees at the Northern Division and any other Division that has Bus personnel employed," Local 689 Grievance No. 9407.  A

copy of Grievance No. 9407 is Exhibit 2 to this Complaint and is incorporated into this Complaint by reference.

10.    Section 101(b) of the CBA does not specifically refer to Title VII, the Civil Rights Act of 1964, as amended, or any other federal, state, or local statute establishing or protecting civil rights or prohibiting discrimination.  Section 101(b) provides:

**Sec. 101 - Purpose of Agreement**

(b) The parties will not discriminate against any employee of the Authority because of race, age, color, religion, sex, sexual orientation or national origin in any manner including upgrading, demotion, transfer, layoff, termination, rate of pay or other forms of compensation or benefits.

11.    Section 104 of the CBA provides, in pertinent part:

**Sec. 104 - Discipline and Grievance Procedure**

(a) Employees (and assisting Union representatives) shall fill out grievance forms to the best of their knowledge and ability. Grievances should be as complete and specific as possible including a statement of the facts involved, the sections of the agreement alleged to have been violated and the remedy sought. Management officials responsible for filing written grievance responses shall do so to the best of their knowledge and ability. Responses shall be as complete and specific as possible including a statement of the facts involved, references to relevant contract language and reasons for the decision.

(b) Grievances shall be processed in the following manner:

Step 1 - Any employee who has a grievance shall (together with the Union representative if the employee so desires) discuss the matter with the employee's immediate superior in an attempt to settle the matter satisfactorily. If the matter has not been settled within five (5) working days of the management action which gave rise to the grievance, the employee may, within ten (10) working days thereafter, file an official written grievance form, a copy of which shall be filed with the employee's immediate superior and another copy shall be filed with the Union through the employee's shop steward (or other officially designated representative).

Step 2 - If the Union, through the employee's shop steward (or other officially designated representative) finds merit to the grievance, it shall, within ten (10) working days after the date of the filing of the formal written grievance, confer with the superintendent of the division (or other management official in charge of

the division, garage, or other facility where the grievant is employed) in an effort to resolve the grievance satisfactorily. The occurrence of such conference shall be noted on the grievance form and signed by the participants. The management official involved shall render a written decision on the grievance within ten (10) working days after such conference with the Union.  If the management action which gave rise to the grievance was taken at a level higher than the superintendent of the division (or other management official in charge of the division, garage or other facility where the grievant is employed) Step 2 may be waived and the Business Agent (or the Business Agent's designee) may proceed directly to Step 3 within ten (10) working days after the date of the filing of the formal written grievance.

Step 3 - If the Union through the Business Agent (or the Business Agent's designee) is not satisfied with the Step 2 decision, it may, within ten (10) working days of the receipt thereof, confer with the Office Director (or the Office Director's designee ). The occurrence of such conference shall be noted on the grievance form and signed by the participants. If the disciplinary action is based in whole or in part on a passenger complaint (or other information provided by the public) the Office of the Director {or designee) at this Step 3 shall provide the Business Agent {or designee) with the identity and contact information of the party submitting the complaint (or information).   The management official involved shall issue a written decision on the appeal within ten (10) working days of the conference with the Union.

Step 4 - If the Union, through the Business Agent (or the Business Agent's designee), is not satisfied with the Step 3 decision, it may appeal the grievance by requesting a conference with the General Manager (or the General Manager's designee) within ten (10) working days of receipt thereof. The General Manager (or the General Manager's Designee) will hold said conference and issue a written decision within twenty (20) working days of the receipt of the Step 4 grievance or the Step 3 appeal.

Step 5 - If the Union is not satisfied with the Step 4 decision, it may, within sixty (60) calendar days after receipt thereof, invoke arbitration in accordance with Section 105 of this Agreement.

(c) Questions arising under the Agreement may be processed directly by the Union commencing with the matter being reduced to writing and served on the affected Office Director (or the Office Director's designee). Within ten (10) working days of receipt of such written notice, the affected Office Director (or the Office Director's designee) will confer with the Union and issue a written decision on the question within twenty (20) working days of such conference. If the Union is not satisfied with that decision, it may appeal the decision to the General Manager {or the General Manager's designee) and pursue arbitration in accordance with the procedures set forth in Steps 4 and 5 above.

12.     Section 105 of the CBA provides:

**Sec. 105 - Arbitration of Questions and Grievances**

Properly accredited representatives of the Authority shall meet and treat with properly accredited representatives of the Union, on all questions and grievances in accordance with Section 104. Questions or grievances that cannot be amicably adjusted by said conferences shall be submitted to a Board of Arbitration composed of three (3) persons, one (1) to be chosen by the Authority, one (1) to be chosen by the Union, and the two (2) thus selected to select a third disinterested arbitrator; the findings of a majority of said Board of Arbitration to be final and binding. Each of the parties hereto shall name its arbitrator within five (5) days after having received written notice from the other party hereto, and if either party fails to name its arbitrator it shall forfeit its case. If, after a period of ten (10) days from the date of the appointment of the two (2) arbitrators representing the Union and the Authority, the third arbitrator has not been selected, then either arbitrator may request the American Arbitration Association to furnish a list of five (5) persons from which one (1) shall be selected to act as the third arbitrator. The arbitrators appointed by the parties, no later than five (5) days after the receipt of such list, shall determine by lot the order of elimination, and thereafter each shall in that order alternately eliminate one (1) name until only [*sic*] (1) name remains. The remaining person on the list shall be the third arbitrator. All the conditions in this contract shall remain undisturbed during the arbitration proceedings. Each of the parties hereto shall bear the expense of its own arbitrator and the parties hereto shall jointly bear the expense of the third arbitrator.

13.     The grievances purport to grieve aspects of WMATA's criminal background screening policy and practices.  The grievances allege that the criminal background screening policy and practices violate Section 101(b) of the CBA and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*., and in particular Section 2000e-2(k) regarding disparate impact claims.

14.     Both grievances are "group" grievances.  Neither grievance identifies an affected WMATA employee, and neither grievance identifies an actual injury or imminent threat of actual injury.  Rather, the grievances claim discrimination based on "disparate impact on African Americans" (Grievance No. 9406) and a "practice [that] is discriminatory against people of color" (Grievance No. 9407).  Both grievances seek Title VII-type, disparate-impact-claim relief,

including a prospective ban on WMATA's application of its criminal background screening policies.

15.     On or about November 5, 2014, Local 689 initiated arbitration of Grievance No. 9406 against WMATA.   On or about December 3, 2014, Local 689 initiated arbitration of Grievance No. 9407 against WMATA.

16.     The CBA does not identify (a) the Civil Rights Act of 1964 or (b) any part of the Civil Rights Act of 1964, including Title VII, as subject to (x) a CBA grievance, (y) the CBA grievance procedures, or (z) arbitration under the CBA.

17.     The grievances and the arbitrations duplicate *Little v. WMATA*: (a) The underlying subject matter of the grievances, WMATA's criminal background screening policies and practices, is the underlying subject matter of *Little v. WMATA*; (b) The "groups" of persons on behalf of whom Local 689 initiated the grievances and the arbitrations are purported members of one or possibly more of the classes on behalf of which Plaintiffs purport to be suing in *Little v. WMATA*; and (c) The relief that Local 689 seeks in the grievances and arbitrations is relief that Plaintiffs seek in *Little v. WMATA*.

18.     The arbitration of Grievance No. 9406 and the arbitration of Grievance No. 9407 are pending.   The arbitration of Grievance No. 9406 is set for hearing on May 18, 2015.   The arbitration of Grievance No. 9407 is set for hearing on May 19, 2015.

19.     By letter dated April 6, 2015 from undersigned counsel for WMATA to Douglas Taylor, counsel for Local 689, WMATA explained that the claims that the grievances asserted were not arbitrable and sought Local 689's cooperation in halting the arbitrations.   WMATA also furnished a copy of the *Little v. WMATA* Complaint to Mr. Taylor.   A copy of WMATA's letter is Exhibit 3 to this Complaint.

20.     By return letter dated April 7, 2015 from Mr. Taylor to undersigned counsel, Local 689 declined to halt the arbitrations and insisted on proceeding with the arbitrations.   A copy of Mr. Taylor's letter is Exhibit 4 to this Complaint.

## Grounds for Relief

21.     Disparate impact claims are exclusively statutory, creations of Title VII, 42 U.S.C.A. § 2000e–2(k).  A disparate impact claim is based on the congressionally established, statutory premise and presumption that there may be an employment practice, neutral on its face and/or adopted without discriminatory intent, that has a disparate impact of such a nature that Congress determined could be the statutory equivalent of intentional discrimination.  Congress decreed the elements of and burdens of proof and persuasion for a claim of disparate impact in 42 U.S.C.A. § 2000e–2(k).

22.     There is no common-law or other non-statutory basis for a claim of discrimination based on disparate impact.

23.     In order for statutory claims to be arbitrable, and as a necessary legal precondition to WMATA's being subject to arbitration of statutory claims, the CBA's agreement to arbitrate must specifically identify the particular statute under which the claim arises and that furnishes a basis for relief.

24.     The CBA does not identify the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, in any respect, even generally.  Particularly, the CBA does not identify Title VII or Section 2000e-2(k) regarding disparate impact claims.

25.     General prohibitions on discrimination and promises not to discriminate in a collective bargaining agreement, like Section 101(b) of the CBA, do not satisfy the requirement

of the specific identification of statutes and cannot make arbitrable the grievances' solely statutory, non-arbitrable, disparate impact claims.

26.     The grievances have no lawful basis upon which an arbitration may proceed, and WMATA cannot be compelled to arbitrate the Grievances.

27.     The grievances are not arbitrable.

28.     *Little v. WMATA* supplants and supersedes the arbitrations.  This court is the correct forum for consideration and resolution of the subject matters of the arbitrations.

29.     There are no written, agreed-on, set, established, or otherwise certain procedures for the "group" arbitrations.  In contrast, the Federal Rules of Civil Procedure, augmented by judicial decisions, provide established, set procedures for both class actions and for claims based on an alleged disparate impact.

30.     There are no written, agreed-on, set, established, or otherwise certain rights and protections for WMATA in the "group" arbitrations.  In contrast, the Federal Rules of Civil Procedure, augmented by judicial decisions, United States statutes, and the United States Constitution provide established, set rights and protections for WMATA with respect to both class actions and claims based on an alleged disparate impact.

31.     WMATA will be denied its procedural and substantive rights to litigate these disputes arising under and regarding WMATA's criminal background screening policies and procedures and will be subject to the risk of multiple and inconsistent determinations and relief if the grievance arbitrations were allowed to proceed.

32.     WMATA faces the foregoing and other imminent and irreparable procedural and substantive harm absent preliminary and permanent injunctive relief, and possibly absent temporary restraining relief, restraining and enjoining the arbitrations.

33. The WMATA employees on behalf of whom Local 689 purports to proceed in the arbitration will not be harmed by restraining and enjoining the arbitrations. To the contrary, restraining and enjoining the arbitrations will benefit these WMATA employees in two principal fashions:

(i) Restraining and enjoining the arbitrations will accord the WMATA employees on behalf of whom Local 689 purports to proceed in the arbitration the same procedures, rights, and protections that the Federal Rules of Civil Procedure, augmented by judicial decisions, United States statutes, and the United States Constitution accord WMATA; and

(ii) The *Little v. WMATA* Plaintiffs both individually and as representatives of classes seek the relief that Local 689 seeks in the grievances and arbitrations. Local 689 and its members do not risk losing rights to relief if the court restrains and enjoins the arbitrations.

34. Leaving the subject matter of the arbitrations to arbitration harms the public interest in the underlying subject matter and in deciding the underlying subject matter. WMATA's criminal background screening policies and practices are too important, and the public interest in WMATA's criminal background screening policies and practices is too great and too important, to be left to the procedural deficiencies, uncertainties, and vagaries of arbitration. Additionally, the public interest in WMATA's criminal background screening policies and practices, WMATA's rights, and the rights of WMATA's employees, are too great and too important to be left to the substantive deficiencies, uncertainties, and vagaries of arbitration.

35. Preliminary and permanent injunctions, and if necessary a temporary restraining order, are necessary to protect and to preserve (a) the public interest and (b) the rights and

procedures guaranteed to the parties by the Federal Rules of Civil Procedure, augmented by judicial decisions, United States statutes, and the United States Constitution.

36.     The subject matter of this suit is ripe for adjudication.

### Relief Requested

WHEREFORE, the Washington Metropolitan Area Transit Authority respectfully prays for the following relief:

1.     Preliminary and permanent injunctions, and if necessary a temporary restraining order,

(a)     Restraining and enjoining the arbitrations;

(b)     Restraining and enjoining Local 689 and all persons acting on behalf of or in concert with Local 689 from proceeding with and in the arbitrations;

(c)     Restraining and enjoining Local 689 and all persons acting on behalf of or in concert with Local 689 from proceeding with and in any and all other grievances and arbitrations alleging, based on, and/or seeking relief with respect to a disparate impact arising or resulting from WMATA's criminal background screening policies and practices; and

(d)     As otherwise are necessary or prudent to accomplish the results that WMATA seeks in this Complaint; and

2.     A declaratory judgment that the claims that Local 689 asserts in the grievances in particular, and disparate-impact claims in general, are not arbitrable; and

3.     Such other and further relief as may be warranted or advisable.

Dated:  April 10, 2015                  Respectfully submitted,

                                        /s/ Harvey A. Levin
                                        Harvey A. Levin (D.C. Bar No. 203869)
                                        T: (202) 585-6942
                                        F: (202) 508-1013
                                        email: hlevin@thompsoncoburn.com

                                        Kathleen E. Kraft (D.C. Bar No. 984445)
                                        T: (202) 585-6922
                                        F: (202) 508-1035
                                        email: kkraft@thompsoncoburn.com

                                        THOMPSON COBURN LLP
                                        1909 K Street, N.W. Suite 600
                                        Washington, D.C.  20006-1167
                                        T: (202) 585-6900
                                        F: (202) 585-6969

                                        Gerard J. Stief (D.C. Bar No. 925933)
                                        Chief Counsel—Appeals & Special Litigation

                                        Washington Metropolitan Area Transit Authority
                                        600 Fifth Street, N.W.
                                        Washington, D.C. 20001
                                        T: (202) 962-1463
                                        email: gstief@wmata.com

                                        Counsel for Washington Metropolitan Area
                                        Transit Authority

Of counsel:

Charles M. Poplstein
Robert J. Wagner
Tabitha G. Davisson
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101-1693
T: (314) 552-6000
F: (314) 552-7000