### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Civil No. 15-536 (RMC)** |
| **v.** | ) ) | |
| **LOCAL 689, AMALGAMATED TRANSIT UNION,** | ) ) ) | |
| **Defendant.** | ) ) | |

### MEMORANDUM OPINION

Washington Metropolitan Area Transit Authority (WMATA) seeks to enjoin two grievance arbitrations initiated by Local 689, Amalgamated Transit Union (Local 689 or the Union). WMATA notes that a putative class action lawsuit, *Little v. Washington Metropolitan Area Transit Authority*, Civil Case No. 14-1289 (RMC) (D.D.C.), is already pending in this Court on similar allegations. WMATA further contends that the grievances are not subject to arbitration because they do not involve any WMATA employee who has been adversely affected. The Court previously granted WMATA's request for a temporary restraining order and will also grant its request to preliminarily enjoin the arbitrations, for the reasons set forth below.[1]

---

[1] Local 689 has moved to dismiss WMATA's Complaint [Dkt. 5] [Dkt 8]. The Court will deny the motion to dismiss based on its finding herein that WMATA is likely to succeed on its claim that the Union's grievances are not arbitrable. Thus, WMATA clearly has set forth a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

# I.  FACTS

### A.  Local 689's Grievances

Since 2011, WMATA has used a criminal background screening policy (the Policy) to make decisions about hiring and rehiring persons who work on WMATA properties, both employees and contractors.  On behalf of unnamed WMATA employees and former employees, Gerry Garnett, bus operator and Second Vice President of Local 689, filed two grievances in his role as a Union Official challenging WMATA's Policy.  The first, Grievance 9406, was filed as a "group grievance" "on behalf of Bus Operators, maintenance workers, and clerical employees at the Northern Division."  Grievance No. 9406 [Dkt. 1-1] at 3.[2]  It alleges that WMATA's Policy is discriminatory because it works a disparate impact against African Americans and seeks to have WMATA "cease[] in its application of [its] background check policy."  *Id.*  The second grievance, Grievance 9407, also brought by Mr. Garnett, was filed as a "group grievance on behalf of all employees at the Northern Division and any other Division that has Bus personnel employed." Grievance No. 9407 [Dkt. 1-2] at 3.[3]  Grievance No. 9407 alleges that WMATA's background check policy discriminates against "people of color" because it disallows reinstatement of former employees who have a Probation Before Judgment (PBJ) on their criminal record.  *Id.*[4]

### B.  The WMATA Compact

WMATA was created by an interstate Compact approved by Congress and codified at D.C. Code § 9-1107.01; Md. Code, Transportation, § 10-204; and Va. Code § 33.2-3100.  Local 689 largely represents operators, mechanics, maintenance personnel, and clerical personnel

---

[2] Citations within this document are to the ECF page number.

[3] Citations within this document are to the ECF page number.

[4] Grievance 9407 does not explicitly maintain that the background check policy works a disparate impact but appears to state a disparate-impact type claim.

employed by WMATA.  Am. Compl. [Dkt. 7] ¶ 4.  Section 66(b) of the Compact provides that

WMATA "shall deal with and enter into written contracts with employees as defined in section 152

of title 29, United States Code, through accredited representatives of such employees or

representatives of any labor organization authorized to act for such employees concerning wages,

salaries, hours, working conditions, and pension or retirement provisions. "  D.C. Code § 9-1107.01.

Under Section 152, the definitional section of the National Labor Relations Act:

> the term "employee" shall include any employee, and shall not be
> limited to the employees of a particular employer, unless this subchapter
> explicitly states otherwise, and shall include any individual whose work
> has ceased as a consequence of, or in connection with, any current labor
> dispute or because of any unfair labor practice, and who has not obtained
> any other regular and substantially equivalent employment, but shall not
> include any individual employed as an agricultural laborer, or in the
> domestic service of any family or person at his home, or any individual
> employed by his parent or spouse, or any individual having the status of
> an independent contractor, or any individual employed as a supervisor,
> or any individual employed by an employer subject to the Railway
> Labor Act, as amended from time to time, or by any other person who
> is not an employer as herein defined.

29 U.S.C. § 152.

> Section 66(c) of the Compact provides for arbitration of labor disputes between

WMATA and its employees:

> *In case of any labor dispute involving the Authority and such employees
> where collective bargaining does not result in agreement, the Authority
> shall submit such dispute to arbitration* by a board composed of three
> persons, one appointed by the Authority, one appointed by the labor
> organization representing the employees, and a third member to be
> agreed upon by the labor organization and the authority . . . .  The
> determination of the majority of the board of arbitration, thus
> established, shall be final and binding on all matters in dispute. . . .  The
> term "labor dispute" shall be broadly construed and shall include any
> controversy concerning wages, salaries, hours, working conditions, or
> benefits including . . . .  but not limited thereto, and including any
> controversy concerning any differences or questions that may arise
> between the parties including but not limited to the making and
> maintaining of collective bargaining agreements, the terms to be
> included in such agreements, and the interpretation or application of

such collective bargaining agreements and any grievance that may arise
and questions concerning representation.

D.C. Code § 1107.66(c) (emphasis added).  Arbitration is, therefore, a statutory requirement and not

the result of bargaining by these parties.

### C. The Collective Bargaining Agreement

Pursuant to the Compact, WMATA and Local 689 entered into a Collective

Bargaining Agreement (CBA) effective from July 1, 2012 to June 30, 2015.   Selected Sections of

CBA [Dkt. 5-5], Attach. 4 to Local 689 Mot. to Dismiss at 2.[5]  In Section 102(a) of the CBA,

WMATA recognizes Local 689 as the exclusive bargaining representative for a broad range of

employees.  *Id.* at 12.  In Section 102(b), both parties recognize that their "legal rights, obligations

and responsibilities . . . with regard to collective bargaining and resort to binding interest arbitration

are specified in the WMATA Compact."  *Id.*  Also in Section 102(b), the Union explicitly

"acknowledges that all matters pertaining to the management of operations, including . . . the hiring

and establishment of standards for selection and qualification of employees . . . , and the

development and enforcement of reasonable rules and regulations regarding employment are the

prerogatives of the Authority . . . ."  *Id.* at 13.

### D. This Lawsuit

On April 10, 2015, WMATA filed a Complaint against Local 689, alleging that the

claims asserted in Grievances 9406 and 9407 were not arbitrable and arguing that the arbitrations of

those Grievances were superseded by a class action lawsuit, *Little v. WMATA*, which involves the

same claims raised in the grievances, among others related to the Policy.  Compl. [Dkt. 1].

WMATA seeks to enjoin the imminent arbitrations and any future arbitrations in which employee

grievants seek to make disparate impact claims based on WMATA's criminal background screening

---

[5] Citations within this document are to the ECF page number.

policies and practices; WMATA also seeks a declaratory judgment that the claims asserted by Local

689 in the grievances, and disparate-impact claims in general, are not arbitrable. *Id.*; *see also* Am.

Compl.  Shortly after filing its Complaint, WMATA filed a Motion for a Temporary Restraining

Order and Preliminary Injunction [Dkt. 4] on April 22, 2015.  On April 24, 2015, Local 689 filed a

motion to dismiss the Complaint [Dkt. 5].  WMATA filed an Amended Complaint on May 1, 2015;

Local 689 renewed its motion to dismiss on May 4, 2015 [Dkt. 8]; and WMATA renewed its

motion for a temporary restraining order and preliminary injunction on May 11, 2011 (WMATA

Second Mem.) [Dkt. 10].  The Court granted WMATA's motion for a temporary restraining order.

*See* Order [Dkt. 11].

At the preliminary injunction hearing on May 14, 2015, the Court inquired about the

estimated number of employees that had been affected by WMATA's Policy.  *See* Hearing Tr. [Dkt.

13] at 14, 38.  Counsel for Local 689 stated that he had not been able to obtain that information

despite requesting it from WMATA, *id*. at 38-39, and when asked by the Court how the case would

proceed if he learned that no individuals had suffered under the Policy, he stated he would

"withdraw such a case."  *Id.* at 41-42.  The Court then directed WMATA to provide to Local 689

"[t]he number of employees in the bargaining unit who have been tested pursuant to [ ] Section 2 of

the [background check] policy" and "the number of employees who failed those tests."  *Id.* at 52.

On June 1, 2015, WMATA filed a supplemental memorandum in support of its

motion for a preliminary injunction stating that it had "furnished Local 689 statistics, statistical

breakdowns, and narrative information showing . . . that there was no employee . . . that was or

could be a grievant within Local 689's Grievance No. 9406 or Grievance No. 9407 and that could

be the subject of or eligible for relief in the pending arbitrations."  WMATA Supplemental Mem. in

Support of TRO/PI (WMATA Third Mem.) [Dkt. 14] at 1.  Specifically, WMATA explained that:

(1) it had not terminated or otherwise disciplined *any* employee on the basis of prior convictions or

PBJs that would be disqualifying under the Policy; (2) no WMATA employee subject to screening under the Policy, whether based on reasonable suspicion or a request to return to duty or transfer, had failed the screening; (3) WMATA declined to reinstate five persons who had previously worked for WMATA based on the results of their background checks, but none of those persons was a WMATA employee or represented by the Union; and (4) WMATA terminated two persons based on their *failure to disclose* all prior criminal convictions as part of their employment applications, not because of those individuals' convictions or because of the Policy.  *Id.* at 2-3.  With respect to five individuals about whom Local 689 inquired: two were terminated based on a failure to disclose; one was terminated because he assaulted a patron and displayed a firearm; and one failed the screening but was reinstated nonetheless.  *Id*. at 4.  The fifth individual was terminated

> for continuing to receive unemployment benefits for 12 weeks after returning to work.  WMATA agreed to reinstate subject to background screening, then denied reinstatement when the background screening revealed a felony conviction for a disqualifying offense.  Local 689 filed a grievance under and went to arbitration based on the agreement to reinstate that preceded the background screening.  The arbitration upheld WMATA's decision not to reinstate, finding that passing the screening was an explicit condition of reinstatement in the agreement, that Local 689 knew of and accepted this explicit condition of reinstatement, and that the former employee had failed to satisfy this explicit, agreed condition.  The basis for the termination was failure to meet the terms and conditions of the settlement agreement.

*Id.*[6]

---

[6] Local 689 takes issue with the fact that WMATA only describes the information provided to Local 689, instead of actually submitting it to the Court.  *See* Local 689 Supplemental Mem. [Dkt. 15] at 2 n.1.  Local 689 suggests that WMATA mischaracterizes the information, but maintain that it would be "unwise and unnecessary" to dispute these mischaracterizations at this stage "as they do not pertain to arbitrability."  *Id.*  However, Local 689 does not point to any employees that have been affected by the Policy.

Local 689 declined to withdraw or modify the grievances and filed a supplementary motion opposing WMATA's request for a preliminary injunction.  *See* Joint Status Report [Dkt. 17]; Local 689 Supplemental Mem. [Dkt. 15].

## II.  LEGAL STANDARDS

### A.  Jurisdiction

The WMATA Compact confers jurisdiction upon this Court.  Section 9-1107.01 of the D.C. Code states that "[t]he United States district courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]."  D.C. Code § 9-1107.01; *see also Barksdale v. Washington Metro. Area Transit Auth.*, 512 F.3d 712, 714 (D.C. Cir. 2008) (quoting D.C. Code). Here, the parties agree that that this Court, and not a panel of arbitrators, has jurisdiction to interpret the language of WMATA's Compact.  *See* Am. Compl. ¶ 9B ("[I]nterpretation of the terms and conditions of the Compact is, therefore, governed by federal law.") (quoting *Pievsky v. Ridge*, 98 F.3d 730, 733 (3d Cir. 1996)); Local 689 Renewed Mot. to Dismiss [Dkt. 8] at 4 ("WMATA's first basis for jurisdiction, namely the responsibility of the Court to interpret WMATA's Compact, is well-plead.").

### B.  Preliminary Injunction

To demonstrate entitlement to a preliminary injunction, a litigant must show: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that the public interest would be furthered by the injunction.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  "[T]he movant has the burden to show that all four factors . . . weigh in favor of the injunction."  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009); *see also Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.")

(internal quotations omitted).  A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

### III. ANALYSIS

**A. Likelihood of Success on the Merits**

The crux of the parties' dispute here is whether Grievances 9406 and 9407 are arbitrable under the Compact.[7]  The Compact directs arbitration of labor disputes "involving the Authority and [its] employees."  D.C. Code § 1107.66(c).  The Grievances here were filed by a Union officer without identification of a single employee affected by the allegedly discriminatory policy.  On its face, the Compact appears to necessitate a disputing employee to require WMATA to submit to arbitration.

According to WMATA, it cannot be compelled to arbitrate because the fact that no employee has been harmed means there is no real dispute or grievance.  WMATA Second Mem. at 9.[8]  Local 689 argues that because an employee—Gerry Garnett, a full-time Bus Operator—has a grievance about a "labor dispute," arbitration is required under the Compact.  Local 689 Supplemental Mem. at 3.  It asserts that even assuming that Mr. Garnett was not affected by WMATA's background check policy and "merely desired that WMATA cease application of a policy which he believes to be discriminatory to others . . . that circumstance would not diminish

---

[7] WMATA also argued in its motion for injunctive relief that disparate-impact based grievance claims are not arbitrable because such claims are statutory creations of Title VII, and the CBA does not identify Title VII as a statute under which a grievant could seek relief.  *See* WMATA Mem. in Supp. of TRO/PI [Dkt. 4-2] at 11, 14-15; Am. Compl. ¶¶ 33-43; WMATA Second Mem. [Dkt. 10] at 2-3.  Given the Court's finding that WMATA has shown a likelihood of success on the merits that the grievances are not arbitrable because there is no affected employee, the Court need not address whether grievances alleging disparate impact are "labor disputes" that would fall under the Compact's mandatory arbitration provision.

[8] Citations to this document are to the ECF page number.

the arbitrability of his grievances as 'labor disputes.'"  *Id.* at 3-4.  Such grievances are arbitrable,

according to Local 689, because under the Compact "labor dispute" is broadly defined to include

any controversy between WMATA, its employees, and the Union, including questions of bargaining

obligation and relationship issues.  *See* D.C. Code § 1107.66(c) ("The term 'labor dispute' shall be

broadly construed and shall include any controversy concerning wages, salaries, hours, working

conditions, or benefits including . . . . but not limited thereto, and including any controversy

concerning any differences or questions that may arise between the parties . . . .").  Local 689 cites

to past practices involving "group grievances" demonstrating that WMATA and the Union routinely

arbitrate questions which indirectly affect employees.  Local 689 Renewed Mem. in Opp. to

TRO/PI [Dkt. 12] at 2; Local 689 Supplemental Mem. at 4; Ex. in Supp. of Local 689 Renewed

Mem. [Dkts. 12-1—12-24].

Local 689's evidence does not go far enough.  Even when the Union previously

challenged WMATA policies in grievances filed by a Union Officer, it is clear that there were

actual affected employees.  In other cases when Union Officers grieved specific policies, those

policies had to do with the rights of the Union itself.  Here, the Grievances allege that WMATA's

background check policy is discriminatory, but there are no employees who have suffered an

adverse impact as a direct result of the policy.  The Grievances also do not voice general objections

to WMATA's policy or challenge any specific employee's discharge, nor could they as they would

not be timely under Section 104 of the CBA, which sets forth Discipline and Grievance procedures.

*See* Selected Sections of CBA [Dkt. 5-5] at 14-18.  Finally, while Local 689 is correct that "labor

dispute" is broadly construed, the Compact still requires a dispute "involving" some employee and

here the Union can point to no employee who has suffered an adverse consequence from the Policy

that is "disputed."  Accordingly, the Court reads the Compact language in its plain form and finds

that WMATA has shown a likelihood of success on the merits of its claim that the Grievances, which fail to name any affected employee, are not subject to arbitration.

In addition, WMATA also has demonstrated a likelihood of success on the merits of its prayer to enjoin the arbitration of Grievance 9407.  Grievance 9407 complains that WMATA's criminal background screening policy prevents rehiring former employees who have criminal records.  The Compact defines covered WMATA employees by adopting the definition of the National Labor Relations Act:

> The term "employee" shall include any employee, and . . . shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment . . . .

29 U.S.C. § 152.  Thus, an individual whose work has ceased is no longer a covered employee unless the cessation was prompted by a labor dispute or unfair labor practice and the individual has not obtained other employment.  *Id.*  In other words, the Union does not represent persons who are not "employees" as defined.  Of course, an employee facing discharge is still an "employee" and represented but once discharge is final, in most circumstances, the individual becomes a former employee who is no longer a member of the represented bargaining unit.

The Compact only requires WMATA to arbitrate disputes concerning "employees" as the NLRA defines the word.  Persons who are discharged by WMATA (without a successful grievance and order of reinstatement) and who apply for reemployment, as reflected in Grievance 9407, are not "employees" within the meaning of the Compact and thus their Grievance is not arbitrable.

For these reasons, the Court finds that WMATA has established a likelihood of success on the merits and this factor weighs in favor of preliminarily enjoining the arbitrations of Grievances 9406 and 9407.

## B.  Irreparable Harm

WMATA argues that it will suffer "per se" irreparable harm if it must arbitrate a dispute that it has not agreed to submit to arbitration.  *See Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365, SEIU*, 975 F. Supp. 445, 446-47 (E.D.N.Y. 1997) (party "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration after its contract expired").  However, WMATA's obligation to arbitrate arises from the Compact and not from the collectively-bargained agreement; thus, the question is whether WMATA must submit to arbitration under the Compact, not whether WMATA "agreed" to arbitrate under the CBA.  The Compact does not require WMATA to arbitrate the grievances of individuals who do not qualify as statutory "employees" as defined in the NLRA.  Thus, to the extent that Local 689 seeks to force arbitration for non-employees, it disregards the limitations of the Compact, and WMATA would suffer irreparable harm if forced to arbitrate Grievance 9407.  Moreover, given the Court's finding above that WMATA is likely to succeed on its argument that Grievance 9406 is not arbitrable, compelling arbitration for that Grievance would irreparably injure WMATA as well.

WMATA also maintains that the challenges raised in the Grievances already are being litigated in federal court in *Little v. WMATA*.  In *Little*, Plaintiffs have brought a putative class action lawsuit under Title VII, 42 U.S.C. § 2000e, proposing a class that would include job applicants, current employees, and any former employees to whom WMATA's Policy was detrimentally applied in the relevant period.  Inasmuch as Local 689 does not, and cannot, represent all persons who might be class members in *Little*, WMATA might well face an immediate arbitration of the Policy *and* federal litigation on the same subject.  As a public agency with financial difficulties, part of the harm to WMATA could be the financial repercussions of dual

litigations on the same subject.  Furthermore, there is also the possibility that WMATA could be subject to inconsistent determinations or to the doctrines of *res judicata* and collateral estoppel.

For these reasons, the Court finds that the Court finds that WMATA has demonstrated irreparable harm if it were required to arbitrate beyond the scope of the Compact.[9]

### C.  Balance of Equities

In evaluating whether a preliminary injunction should issue, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (citation and quotation marks omitted). Here, the balance of equities weighs in favor of WMATA, as Local 689 and those it represents will not be harmed by a preliminary injunction because the Union has no right to arbitrate Grievance 9407 on behalf of former employees and there are no current employees affected by the "dispute" raised in Grievance 9406.  Moreover, as noted above, former employees are covered by the class action in *Little v. WMATA*.[10]  Accordingly, this factor weighs in favor of granting a preliminary injunction.

### D.  Public Interest

WMATA argues that "leaving the subject matter of the grievances to arbitration harms the public interest" because "these policies and practices are too important . . . to be left to a decision in a forum where there are no defined rights, there are no protections, and there is no governing law."  WMATA Mem. in Support of TRO/PI [Dkt. 4-2] at 19.  These are generalized objections to the arbitration process; labor arbitrators routinely decide matters of great importance.

---

[9] WMATA also that it will suffer irreparable harm if it is required to arbitrate due to the absence of formal procedures, protections, and legal considerations available in federal court.  However, these complaints would be irrelevant if the grievances fell under the Compact.

[10] Local 689 contends that the grievances are not limited to claims of disparate impact because the Policy may also adversely affect white employees.  However, the Union has not named any employee, current or former, affected by the Policy.

Even so, the Court is persuaded that the public interest is affected by WMATA's criminal background screening policy, through which WMATA seeks to avoid hiring individuals who have committed serious crimes, including sexual assaults generally and assaults on children.  On the other hand, it is also contrary to the public interest if WMATA's Policy has a disparate impact on African Americans.  On balance, therefore, the Court finds that consideration of the public interest neither favors nor disfavors an injunction.

## IV.  CONCLUSION

Finding that the factors weigh in favor of granting a preliminary injunction, the Court will grant WMATA's motion for a preliminary injunction [Dkt. 4] [Dkt. 10], deny Local 689's motion to dismiss [Dkt. 5] [Dkt. 8], and will enjoin Local 689 and all persons acting on behalf of or in concert with Local 689 from proceeding with and in the arbitrations of Grievances 9406 and 9407.  The parties will be directed to meet, confer, and file a joint proposed schedule for subsequent proceedings in this case.  A memorializing Order accompanies this Opinion.


Date: June 29, 2015                                        _____/s/_____
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge